UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Civil Action No. 22-4344 (JXN) (JBC) |
| v. | : | OPINION |
| ISP ENVIRONMENTAL SERVICES INC. and G-I HOLDINGS INC., | : | |
| Defendants. | : | |

**NEALS**, District Judge:

This matter comes before the Court on Defendant ISP Environmental Services Inc.'s ("IES") motion to dismiss the United States of America's ("Plaintiff") complaint (ECF No. 1) (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5). Plaintiff opposed (ECF No. 16), and IES replied. (ECF No. 21). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1345 and 1355, and 42 U.S.C. §§ 9613(b). Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b). The Court has carefully considered the parties' submissions and heard oral argument on April 22, 2024. (ECF No. 51). For the reasons set forth below, IES's motion to dismiss (ECF No. 5) is **DENIED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

This is an environmental matter under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606(b)(1), 9607(a), (c)(3), and 9613(g)(2). On June 30, 2022, Plaintiff filed the three-count Complaint against IES and Defendant G-I Holdings Inc. ("G-I") alleging in pertinent part that IES and GI

(together, the "Defendants") are liable for the "release[]" of "hazardous substances" "from the LCP Chemicals, Inc., Superfund Site in Linden, Union County, New Jersey" (the "Linden Site"), "including mercury" into the "South Branch Creek and the Northern Off-Site Ditch." (Compl. ¶¶ 1, 14, 56, 65-66).[1]

Count One is alleged against Defendants for the "recovery of unreimbursed response costs incurred, and to be incurred, in response to" the release of hazardous substances from the Linden Site. Counts Two and Three are alleged against IES only for "civil penalties and punitive damages" related to IES's "failure without cause to comply with" the U.S. Environmental Protection Agency's ("EPA") "May 20, 2015" Order "directing IES to complete the remedial design of the remedy selected for the" Linden Site. (*Id.* ¶ 1). The relevant facts follow.

From "1972 until the mid-1980s[,]" the Linden Site "was owned and operated by GAF Corporation" ("Old GAF")[.]" (*Id.* ¶ 15). In 1987, G-I, a "holding subsidiary for five additional subsidiaries[,]" including "Dorset Inc. [("Dorset")], Edgecliff Inc. [("Edgecliff")], Clover Inc., Perth Inc. and Merick Inc.[,]" was incorporated "as a direct, wholly-owned subsidiary of" Newco Holdings, Inc. ("Newco Holdings"), which had a subsidiary named Newco Acquisition Corp. ("Newco Acquisition"). (*Id.* ¶ 32). In 1988, Newco Holdings and Newco Acquisition entered an "Agreement and Plan of Merger" with Old GAF, "agreeing to merge [Newco] Acquisition with and into" Old GAF, with Old GAF "as the surviving company." (*Id.* ¶ 35). Old GAF "became an indirect subsidiary of [Newco] Holdings and a direct subsidiary of the five subsidiaries of" G-I and "expressly retained its liabilities under CERCLA." (*Id.* ¶¶ 30, 36).

In 1989, Old GAF entered a "Plan of Complete Liquidation" that "transferred most of its assets and related liabilities to its five direct parent companies." (*Id.* ¶ 37). Dorset "acquired" Old

---

[1] The following factual allegations are taken from the Amended Complaint that are accepted as true. *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010).

GAF's "assets and assumed its liabilities" related to its "Chemicals Businesses" and "acquired nearly 88% of the fair market value of" Old GAF's assets, which "include the assets and liabilities" of the Linden Site. (*Id.* ¶¶ 38-39). Edgecliff acquired Old GAF's "assets and assumed its liabilities relating" to its other businesses and "acquired nearly 10.85% of its fair market value of" Old GAF's assets. (*Id.* ¶ 40). Alleged in the alternative, "the assets and liabilities" assumed by Edgecliff "include the assets and liabilities of the Linden Site." (*Id.* ¶ 41). In 1989, Old GAF was dissolved and Newco Holdings "changed its name to GAF Corporation" ("New GAF"). (*Id.* ¶ 43). "That same day, GAF Chemicals Corporation was merged into Dorset[], which was then renamed GAF Chemicals Corporation" ("GAF Chemicals"). (*Id.* ¶ 43).

In 1991, GAF Chemicals "entered into a reorganization agreement that created" International Specialty Products Inc., and its subsidiary" IES. (*Id.* ¶ 47). That year, IES entered "an 'Assumption of Liabilities and Continuing Obligations' agreement 'in favor of' GAF chemicals and New GAF." (*Id.* ¶ 48). "Under this agreement, IES assumed from GAF Chemicals '[a]ll liabilities and obligations relating to the manufacture and sale of specialty chemicals at" the Linden Site. (*Id.* ¶ 49). In 2000, New GAF "merged into" G-I. (*Id.* ¶ 51).

As a result of these mergers, G-I "became the corporate successor to New GAF and, in turn, corporate successor to Old GAF." (*Id.* ¶ 52). Thus, G-I "is the successor-in-interest to Old GAF's liability under CERCLA notwithstanding any assumption of liabilities under the Plan of Complete Liquidation and/or IES's assumption of liabilities under the 'Assumption of Liabilities and Continuing Obligations' agreement." (*Id.* ¶ 53). Additionally, IES "expressly assumed the liabilities of Old GAF." (*Id.* ¶¶ 49, 54). "Alternatively, as the successor to" formerly Edgecliff, "G-I expressly assumed the liabilities of Old GAF." (*Id.* ¶ 55).

In 1998, IES "indicated that it was a successor to Old GAF with respect to the" Linden Site. (*Id.* ¶ 57). In response to an EPA letter "sent to several potentially responsible parties" or ("PRP"), IES made "a good faith offer to perform" the "remedial investigation and feasibility study" ("RI/FS") to help "finance and/or perform the RI/FS" at the Linden Site. (*Id.* ¶¶ 60-61). In 1999, IES and the EPA "entered into an Administrative Order on Consent" ("AOC") "requiring IES to perform RI/FS work at" the Linden Site. (*Id.* ¶ 62). In 2013, IES "completed" RI and FS Reports regarding the RI/FS work at the Linden site. (*Id.* ¶¶ 63-64).

On July 8, 2022, IES filed the instant motion to dismiss.[2] On August 1, 2022, Plaintiff opposed. On August 8, 2022, IES replied. This matter is ripe for consideration.

## II.     **LEGAL STANDARD**

Rule 8 requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations and ellipses omitted). On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint is sufficient, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and

---

[2] G-I did not join in IES's motion to dismiss and Answered the Complaint. (ECF Nos. 26, 28).

therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

**III.        DISCUSSION**[3]

        **A.        Count One Pleads a Plausible Section 107(a) Claim against IES**

The thrust of IES's contention is that CERCLA prohibits the transfer of liability as a matter of law under 42 U.S.C. § 9607(e)(1). (ECF No. 5-1 at 16-23).[4] Plaintiff counters that IES conflates "divesting" liability, which § 9607(e)(1) prevents, with successor liability, which CERCLA allows. (ECF No. 16 at 14-25). The Court agrees.

        **1.        The Complaint Sufficiently Alleges Successor Liability**

Under CERCLA, a "person" means "an individual, firm, corporation, association, partnership . . . ." 42 U.S.C. § 9601(21). A "facility" means "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed . . . ." § 9601(9). A "release" means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, . . . into the environment . . . ." § 9601(21). A "hazardous substance" means "any element, compound,

---

[3] G-I filed a supplemental letter (ECF No. 15), which IES opposed (ECF No. 22), that directs the Court to pending New Jersey Superior Court litigation between G-I, IES, and their affiliates, *Ashland Inc., et al. v. G-I Holdings Inc., et al.* (MRS L-2331-15). G-I contends that *Ashland Inc.* provides context for legal positions taken here. When evaluating a defendant's 12(b)(6) motion, the Court may review the "allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Benefit. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Thus, the Court may consider relevant state-court proceedings that are pending. *See, e.g., Wells Fargo Bank*, *N.A. v. Carnell,* No. 16-130 2017 WL 1498087, at *3 (W.D. Pa. Apr. 25, 2017) (citations omitted). However, the Court declines to consider the case in its decision here.

Plaintiff also filed a supplemental letter (ECF No. 40), which IES opposed (ECF No. 41), seeking to supplement its opposition (ECF No. 16) by enclosing the opinion in *Wisconsin Gas LLC v. Am. Natural Res. Co.*, No. 20-1334, 2023 WL 2652079 (E.D. Wis. Mar. 27, 2023). While the Court may consider *Wisconsin Gas LLC*, it did not do so here because the case is distinguishable, relied on Seventh Circuit jurisprudence, and has not been cited by any court. The Court similarly notes that though Local Civil Rule 7.1(d)(6) provides that "[n]o sur-replies are permitted without permission of the Judge[,]" IES relied on *Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 487 (Ind. Ct. App. 2000) during oral argument, which was not included in its motion papers.

[4] The Court refers to the ECF page numbers.

mixture, solution or substance" that "when released into the environment may present substantial danger to the public health or the environment . . . ."  §§ 9601(14), 9602(a).  "Response" means "remove, removal, remedy, and remedial action . . . ." § 9601(25).

Here, Plaintiff alleges that the Linden Site is a "facility" under CERCLA.  (Compl. ¶ 88). Old GAF "was an 'owner' and/or 'operator'" of the Linden Site "at the time of 'disposal' of a hazardous substance" at the Linden Site.  (*Id*. ¶ 70).  There "have been 'releases' under CERCLA, and "threatened releases, of 'hazardous substances,'" within the meaning of the same statute.  (*Id.* ¶ 73).  Specifically, "mercury, arsenic, lead, polychlorinated biphenyls, VOCs, and semi-VOCs." (*Ibid.*).  And the "EPA has incurred and will continue to incur response costs . . . ." (*Id.* ¶ 74).  To trigger IES's liability, Plaintiff must allege that IES is a PRP to stand in Old GAF's place.

"PRPs are: (1) current owners and operators of the 'facility' at which the contamination occurred; (2) persons who were owners or operators of the facility 'at the time of disposal of any hazardous substance'; (3) persons who arranged for the disposal or treatment of the hazardous substance; and (4) persons who transported the hazardous substance." *Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 379 (3d Cir. 2013) (quoting 42 U.S.C. § 9607(a)). CERCLA "liability is imposed where the plaintiff establishes the following four elements: 1) the defendant falls within one of the [] categories of 'responsible parties'[5]; 2) the hazardous substances are disposed at a 'facility'; 3) there is a 'release' or 'threatened release' of hazardous substances from the facility into the environment; and 4) the release causes the incurrence of 'response costs.'" *Outlet City, Inc. v. W. Chem. Prods., Inc.*, 60 F.App'x 922, 925-26 (3d Cir. 2003) (citation

---

[5] (1) current owners and operators of the 'facility' at which the contamination occurred; (2) persons who were owners or operators of the facility 'at the time of disposal of any hazardous substance'; (3) persons who arranged for the disposal or treatment of the hazardous substance; and (4) persons who transported the hazardous substance." *Litgo N.J., Inc.*, 725 F.3d 379; 42 U.S.C. § 9607(a).

omitted).  In the case of IES, which disputes being an "owner[] or "operator[]" of Old GAF (ECF No. 5-1 at 16-17), Plaintiff has sufficiently alleged successor liability.

"CERCLA is a sweeping federal remedial statute, enacted . . . to ensure that *everyone* who is potentially responsible for hazardous-waste contamination may be forced to contribute to the costs of cleanup." *United States v. Gen. Battery Corp.*, 423 F.3d 294, 297-98 (3d Cir. 2005) (citations omitted).  Against this backdrop, the Third Circuit has explained that "CERCLA successor liability is a matter of uniform federal law, as derived from 'the general doctrine of successor liability in operation in most states.'"  *Id.* at 298 (quoting *Smith Land & Improv. Corp v. Celotex Corp.*, 851 F.2d 86, 92 (3d Cir. 1988)).

Indeed, "in certain circumstances, a successor corporation may be held liable under CERCLA as a 'person,' within the meaning of 42 U.S.C. § 9607, for the acts and omissions of its predecessor corporations." *Stearns & Foster Bedding Co. v. Franklin Holding Corp.*, 947 F. Supp. 790, 810 (D.N.J. 1996); *see also Gen. Battery Corp.*, 423 F.3d at 298 ("[I]t is now settled that CERCLA incorporates common law principles of indirect corporate liability, including successor liability.") (citations omitted).  Such liability occurs when the successor corporation: "(1) [] assumes liability; (2) the transaction amounts to a consolidation or merger; (3) the transaction is fraudulent and intended to provide an escape from liability; or (4) the purchasing corporation is a mere continuation of the selling company." *Gen. Battery Corp.*, 423 F.3d at 305 (citations omitted).

Here, Plaintiff alleges CERCLA liability under an assumption of liability theory. Specifically, that in entering the "Assumption of Liabilities and Continuing Obligations" agreement, IES "assumed from GAF Chemicals all liabilities and obligations relating to the manufacture and sale of specialty chemicals" at the Linden Site, "including liabilities for the

7

remediation of the" Linden Site. (Compl. ¶¶ 48-49). This means that "IES expressly assumed the liabilities of Old GAF." (*Id.* ¶ 54). Moreover, that IES "is a successor-in-interest to [O]ld GAF with respect to" the Linden Site through the "Plan of Complete Liquidation" it entered. (*Id.* ¶¶ 71, 90). The "Plan of Complete Liquidation[]" was included in the "Assumption of Liabilities and Continuing Obligations[,]" where IES "expressly assumed the liabilities of Old GAF." (*Id.* ¶¶ 37, 48-49, 54).

Plaintiff further alleges that IES represented in 1998 that it was a successor to Old GAF and the "successor to GAF Corporation with respect to the" Linden Site. (*Id.* ¶¶ 56-57). IES made "a good faith offer to perform" the RI/FS at the Linden Site in response to an EPA letter that was sent to PRPs. (*Id.* ¶¶ 60-61). IES then entered the AOC with the EPA in 1999 "requiring IES to perform RI/FS work at" the Linden Site. (*Id.* ¶ 62). Finally, IES "completed" RI and FS Reports regarding the RI/FS work at the Linden site. (*Id.* ¶¶ 63-64). Therefore, IES is "jointly and severally liable under CERCLA" for the EPA's "unrecovered past response costs incurred, and all further response costs EPA may incur in connection with the" Linden Site. (*Id.* ¶ 75).

In affording Plaintiff all reasonable inferences, these facts state a plausible Section 107(a) claim. First, IES may be a PRP, who the EPA may seek cost recovery against. *See United States v. Occidental Chem. Corp.*, 200 F.3d 143, 147 (3d Cir. 1999) (The EPA "can conduct the remedial work at a site, . . . then sue the potentially responsible parties under § 107 to recover its costs" and "may sue one or all of the PRPs involved at a given site . . . ."). Second, courts deny motions to dismiss if the complaint alleges sufficient "successor liability allegations" because the information needed to "substantiate" a plaintiff's claim "of successor liability" is "likely in the possession" of the defendant. *NL Indus., Inc. v. Old Bridge Twp.*, No. 13-3493, 2014 WL 12631479, at *10 (D.N.J. June 30, 2014); *see also Bolinger v. RMB, Inc.*, No. 18-15446, 2023 WL 2612259, at *4

(D.N.J. Mar. 21, 2023).  To be sure, sufficient successor liability allegations "satisfy the Rule 8 pleading standard."  *NL Indus., Inc.*, 2014 WL 12631479, at *10.

Accordingly, Count One alleges a plausible CERCLA Section 107(a) claim.

### 2. Section 107(e)(1) Does Not Preclude the 107(a) Claim

IES argues in a footnote that the Court need not decide whether there is successor liability because GAF Chemicals continued to exist after IES allegedly assumed the CERCLA liabilities and "any purported transfer of assumption of" the Linden Site's CERCLA liability "is not a question of successor liability but nullified as an improper transfer of CERCLA liability under Section 107(e)."  (ECF No. 5-1 at 22 n.11).  In support, IES relies on *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1233 (E.D. Cal. 1997).  Plaintiff counters that *Iron Mountain Mines, Inc.*, does not stand for the proposition advanced by IES; the continued existence of a predecessor company is irrelevant; and such an argument should not be considered on a motion to dismiss.  (ECF No. 16 at 29-32).  While the Court disagrees that IES's assertion is not ripe, the existence of GAF Chemicals, the successor to Old/New GAF, does not bar Plaintiff's action.

District courts are charged with "supplement[ing]" CERCLA.  *See Smith Land & Imp. Corp.*, 851 F.2d at 91 ("It is not surprising that, as a hastily conceived and briefly debated piece of legislation, CERCLA failed to address many important issues, including corporate successor liability.  The meager legislative history available indicates that Congress expected the courts to develop a federal common law to supplement the statute.") (citations omitted).  The statute "views response liability as a remedial, rather than a punitive, measure whose primary aim is to correct the hazardous condition."  *Id.* at 91.  As to successor liability, "Congressional intent supports the conclusion that, when choosing between the taxpayers or a successor corporation, the successor should bear the cost."  *Id.* at 92.

9

Section 107(e)(1) provides that "[n]o indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any . . . facility . . . to any other person the liability imposed under this section." § 9607(e)(1). Section 107(e)(1) "renders ineffective any attempt to completely 'transfer' liability . . . ." *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206, 211 (3d Cir. 1994) (citation omitted). However, indemnification agreements under § 9607(e), "to indemnify or hold harmless are enforceable between private parties but not against the government." *Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 404 (3d Cir. 1995) (citations and internal quotations and brackets omitted). "Although these private agreements cannot nullify a party's underlying CERCLA liability, they are effective to shift the ultimate financial loss." *Id.* at 404 (citations omitted). Because CERCLA successor liability is a creature of federal common law, Section 107(e) does not provide whether claims grounded in an indemnification provision and successor liability may coincide. Thus, we look to the case law.

The Court begins its analysis by recognizing that *Iron Mountain Mines, Inc.* is non-binding precedent. *See In re Roche*, 582 B.R. 632, 636 (Bankr. W.D. Pa. 2018) ("It is a fundamental axiom of judicial interpretation and construction that the opinions of other sister jurisdictions are not binding precedent, but may be persuasive based on the facts and circumstances of the individual cases.") (footnote omitted). After careful review, the Court finds that *Iron Mountain Mines, Inc.* does support IES's position.

In *Iron Mountain Mines, Inc.*, the United States and State of California (the "Government") sought to "recover CERCLA response costs incurred in investigating and abating hazardous substance contamination at Iron Mountain Mine." *Iron Mountain Mines, Inc.*, 987 F. Supp. at 1234-35. Defendant Rhone-Poulenc Basic Chemicals Co., Inc. ("Basic Chemicals"), as well as the Government moved for "partial adjudication on the limited issue of whether" Basic Chemicals

10

"is a responsible party as the corporate successor to Mountain Cooper, Ltd. ('Mountain Cooper') and its subsidiaries, which owned and operated Iron Mountain Mine from 1896 to 1968." *Id.* at 1235.  The district court noted that "whether [Basic Chemicals] succeeded to Mountain Cooper's liabilities hinges on whether" Stauffer Chemical Company ("Stauffer") "became the corporate successor to Mountain Cooper." *Id.* at 1235.

In the 1960's, Stauffer "wanted to dissolve Mountain Cooper and integrate it into Stauffer [] to obtain a tax deduction." *Id.* at 1236.  "[A]s Mountain Cooper's sole shareholder, [Stauffer,] approved the dissolution on December 11, 1968[,]" and, on December 19, 1968, "entered into an Assignment Agreement with Mountain Cooper" where Mountain Cooper "agreed" in part to "'assume all of the liabilities and contractual obligations of Mountain Cooper . . . .'" *Id.* at 1236 (internal brackets omitted).  Stauffer also "agreed 'to perform and discharge each and all of the contracts, obligations and liabilities of Mountain Cooper of California,'" Mountain Cooper's wholly owned subsidiary, "'including all known debts and liabilities . . . .'" *Id.* at 1237 (internal brackets and ellipses omitted).  "After Mountain Cooper and Mountain Cooper of California were dissolved and their assets acquired by Stauffer . . ., Iron Mountain Mine remained mostly inactive[,]" with Stauffer "decid[ing] not to reopen" it. *Id.* at 1237.

In considering the Government's successor liability arguments, the court noted that "Stauffer will be deemed to be Mountain Copper's successor only if the transaction falls within one of the" four exceptions to the rule that a successor corporation is not liable under CERCLA for the acts of its predecessors. *Id.* at 1239.  In so doing, the court considered the assumption of liability exception via express assumption of Stauffer's predecessor's liability. *Id.* at 1239 (footnote omitted).  There, Basic Chemicals argued that the "Government does not have standing under CERCLA" due to 42 U.S.C. § 9607(e)(1). *Id.* at 1239 n.12.

11

In relying on *John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401, 405 (1st Cir. 1993),[6] (noting that though a "party cannot escape liability by means of a contract with another party" under 42 U.S.C. § 9607(e)(1), the "government or a private party can [still] pursue any responsible party it desires[,]") the court in *Iron Mountain Mines, Inc.* found that "if Mountain Cooper and its subsidiaries still existed, the Government could pursue those corporations for payment of response costs as an owner and operator of Iron Mountain Mine." *Id.* at 1239 n.12. Also, that while "[a]ny attempted transfer of CERCLA liability would be nullified under § 107(e)(1)[,]" that section "does not impinge on successor liability . . . ." *Ibid.* To that end, the "Government still would be able to pursue" Basic Chemicals "on the ground that it is Mountain Cooper's corporate successor." *Ibid.* Ultimately, the Court held that Stauffer's assumption of "all liabilities" of Mountain Cooper in part triggered Stauffer's express assumption of Mountain Cooper's CERCLA liabilities. *Id.* at 1243. "As a result, it follows that Stauffer is the corporate successor of Mountain Cooper, and that" Basic Chemicals, "standing in the shoes of Stauffer, is now the corporate successor of Mountain Cooper." *Id.* at 1244.

Pertinent here, *Iron Mountain Mines, Inc.*, provides that the Government may still pursue a claim under Section 107(a) despite the existence of Section 107(e)(1). The court recognized that "the intent of § 107(e)(1) is to expand, not restrict, the group of potentially responsible parties." *Id.* at 1239 n.12. Thus, the case favors Plaintiff's position rather than that of IES.

IES's supplemental cases are unpersuasive because they are legally and factually distinguishable. First, the court in *Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 153 F. Supp. 3d 778, 807 (W.D. Pa. 2015), aff'd, 870 F.3d 244 (3d Cir. 2017), dealt with corporate successor

---

[6] *John S. Boyd Co.* has been cited by several Third Circuit Court of Appeals cases, including *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 107 (3d Cir. 1994), which recognized that under § 107(e)(1) "responsible parties cannot contract away their liability under CERCLA for cleaning up a release, but . . . may allocate the ultimate financial burden of that clean-up by agreements among themselves." (citations omitted).

liability in a non-CERCLA context involving a dispute between a lessee and sublessee of railroad and branch rail lines and its parent real estate investment trust, and is therefore inapposite.

IES relies on additional non-CERCLA cases that sound in products liability, which are accordingly distinguishable from the case at bar. *Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 487 (Ind. Ct. App. 2000), an Indiana Court of Appeals case that involved products liability claims, held that "a successor corporation is liable only when the predecessor corporation no longer exists." (citing *Sorenson v. Allied Prods. Corp.*, 706 N.E.2d 1097, 1099 (Ind. Ct. App. 1999))[7]. That case concerned whether the State of Indiana "should recognize the 'product line exception' in product liability cases brought by injured parties against successor corporations." *Id.* at 481. Because the facts and legal issues are distinguishable, the case is not informative here.

IES's additional non-CERCLA cases are similarly unpersuasive. *See also In re Welding Fume Prods. Liab. Litig.*, No. 3-17000, 2010 WL 2403355 (N.D. Ohio June 11, 2020) (multi-district litigation matter involving plaintiffs' alleged injury due to inhaling manganese fumes); *Hyjurick v. Commonwealth Land Title Ins. Co.*, No. 11-1282, 2012 WL 1463633 (M.D. Pa. Apr. 27, 2012) (insurance matter concerning claims under Pennsylvania's unfair trade practices and consumer protections law).

IES cites a single CERCLA matter in support of its Section 107(e)(1) argument, *A-C Reorganization Trust v. E.I. DuPont De Nemours & Co.*, which held that "[a]lthough the law of corporate succession contemplates that corporate parties may allocate liabilities in an asset sale, CERCLA § 107(e)(1) nullifies any attempted transfer of CERCLA liability." No. 94-574, 1997 WL 381962, at *7 (E.D. Wis. Mar. 10, 1997). However, this holding provides no guidance on the

---

[7] In *Sorenson*, another products liability matter, the court held that "a successor's liability, under these exceptions, takes place only when the predecessor corporation no longer exists, such as when a corporation dissolves or liquidates in bankruptcy." (citation omitted). The case is unpersuasive.

issue posited here—whether GAF Chemicals continuing to exist after IES allegedly assumed Old GAF's liabilities bars Plaintiff's Section 107(a) claim against IES.

In carefully reviewing the CERCLA statute and the relevant authorities, Plaintiff's Section 107(a) claim may proceed beyond the pleadings stage. Unlike a merger exception, which requires that the "seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible" (*Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 469 (3d Cir. 2006)), the assumption of liability theory does not appear to require the dissolution or liquidation of GAF Chemicals prior to IES's assumption of liabilities.

Courts in this District have considered successor liability where the predecessor corporation liquidated or otherwise dissolved. *See Occidental Chem. Corp. v. 21st Century Fox Am.*, No. 18-11273, 2020 WL 13890453 (D.N.J. July 10, 2020). However, the parties proffer no Third Circuit or sister court jurisprudence that provides that for a defendant to be liable under CERCLA on an assumption of liability theory, the previous corporation must cease to exist. Accordingly, the assumption of liability exception, at this stage, allows this case to proceed.

### B. Counts Two and Three Plead Plausible Claims for Monetary Damages

Because Count One may proceed (ECF No. 5-1 at 23-24), the Court moves to Counts Two and Three, which the Court determines are equally sufficiently pled.

CERCLA permits the Government to obtain civil penalties and punitive damages against PRPs. "[W]hen the President determines that there may be imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General . . . to secure such relief as may be necessary to abate such danger or threat . . . ." 42 U.S.C. § 9606(a). "Any person who, without sufficient cause, [] violates, or fails or refuses to comply with, any" such order, may "be

fined not more than $25,000 for each day" such "violation occurs[.]" § 9606(b)(1).

Plaintiff alleges that the EPA informed IES in 2014 that it was a PRP and "request[ed] a good faith offer" from IES "to fully finance and/or perform remedial design and remedial action ('RD/RA') work" at the Linden Site. (Compl. ¶ 77). IES "denied responsibility for RD/RA work, arguing that it was not a successor to Old GAF's liability" at the Linden Site. (*Id.* ¶ 78). Thereafter, the "Director of the Superfund and Emergency Management Division . . ., determined that there was or may have been an imminent and substantial endangerment to the public health or welfare or the environment because of the actual and/or threatened releases of hazardous substances at or from the" Linden Site. (*Id.* ¶ 79).

In 2015, the EPA "issue[d] an order to" IES "under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a)" that "direct[ed]" IES to "commit to financing and performing the RD work for the entire" Linden Site. (*Id.* ¶ 80). Violation of the Order, which means "failure to 'unequivocally commit to perform or finance the Work[,]" subjected IES "to civil penalties per day[,]" as well as punitive damages. (*Id.* ¶¶ 81-82). That same year, IES "notified EPA that it would not comply with the Order and that it was asserting 'sufficient cause defenses[.]'" (*Id.* ¶ 83). Plaintiff alleges that IES "lacked sufficient cause to refuse and to fail to comply with the Order." (*Id.* ¶ 102).

IES argues that it is not subject to monetary penalties because it is not a liable party. (ECF No. 5-1 at 23-24). In support, it attaches a July 14, 2015 letter from counsel to the EPA where it provided the following "sufficient cause defenses" to the Order: (i) IES is not a covered person under CERCLA; (ii) IES is not a successor to the Linden Site's prior owners; (iii) IES did not assume the Linden Site's liabilities; and (iv) IES is not a guarantor of those liabilities. (ECF No. 5-2 at 102, 106-12).

Because Plaintiff has sufficiently alleged facts for CERCLA liability under Count One,

Counts Two and Three survive a motion to dismiss. Whether IES proffered sufficient cause defenses to refuse to comply with the EPA's Order will be determined at a later stage in this litigation.

### IV.      CONCLUSION

For the reasons set forth above, IES's motion to dismiss (ECF No. 5) is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: 5/7/2024

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge