# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISP ENVIRONMENTAL SERVICES INC. and G-I HOLDINGS INC.,<br><br>Defendants. | Civil Action No. 22-4344 (JXN) (JBC)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Defendant ISP Environmental Services Inc.'s ("IES") motion pursuant to L. Civ. R. 7.1(i) to reconsider (ECF No. 59) the Court's May 7, 2024 Opinion (ECF No. 55) (the "May 7 Opinion") and Order (ECF No. 56) (together, the "May 7 Order"). Plaintiff United States of America ("Plaintiff" or "United States") opposed. (ECF No. 63). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, IES' motion to reconsider (ECF No. 59) the May 7 Order is **DENIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

This is an environmental matter under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606(b)(1), 9607(a), (c)(3), and 9613(g)(2). On June 30, 2022, Plaintiff filed a three-count Complaint against IES and Defendant G-I Holdings Inc. ("G-I") alleging in pertinent part that IES and GI (together, the "Defendants") are liable for the "release[]" of "hazardous substances" "from the LCP Chemicals, Inc., Superfund Site in Linden, Union County, New Jersey" (the "Linden Site"),

1

"including mercury" into the "South Branch Creek and the Northern Off-Site Ditch." (Compl. ¶¶ 1, 14, 56, 65-66).[1]

Count One is alleged against Defendants for the "recovery of unreimbursed response costs incurred, and to be incurred, in response to" the release of hazardous substances from the Linden Site. Counts Two and Three are alleged against IES only for "civil penalties and punitive damages" related to IES's "failure without cause to comply with" the U.S. Environmental Protection Agency's ("EPA") "May 20, 2015" Order "directing IES to complete the remedial design of the remedy selected for the" Linden Site. (*Id.* ¶ 1). The relevant facts follow.

From "1972 until the mid-1980s[,]" the Linden Site "was owned and operated by GAF Corporation" ("Old GAF")[.]" (*Id.* ¶ 15). In 1987, G-I, a "holding subsidiary for five additional subsidiaries[,]" including "Dorset Inc. [("Dorset")], Edgecliff Inc. [("Edgecliff")], Clover Inc., Perth Inc. and Merick Inc.[,]" was incorporated "as a direct, wholly-owned subsidiary of" Newco Holdings, Inc. ("Newco Holdings"), which had a subsidiary named Newco Acquisition Corp. ("Newco Acquisition"). (*Id.* ¶ 32). In 1988, Newco Holdings and Newco Acquisition entered an "Agreement and Plan of Merger" with Old GAF, "agreeing to merge [Newco] Acquisition with and into" Old GAF, with Old GAF "as the surviving company." (*Id.* ¶ 35). Old GAF "became an indirect subsidiary of [Newco] Holdings and a direct subsidiary of the five subsidiaries of" G-I and "expressly retained its liabilities under CERCLA." (*Id.* ¶¶ 30, 36).

In 1989, Old GAF entered a "Plan of Complete Liquidation" that "transferred most of its assets and related liabilities to its five direct parent companies." (*Id.* ¶ 37). Dorset "acquired" Old GAF's "assets and assumed its liabilities" related to its "Chemicals Businesses" and "acquired nearly 88% of the fair market value of" Old GAF's assets, which "include the assets and liabilities"

---

[1] The following factual allegations are taken from the Amended Complaint that are accepted as true. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

2

of the Linden Site. (*Id.* ¶¶ 38-39). Edgecliff acquired Old GAF's "assets and assumed its liabilities relating" to its other businesses and "acquired nearly 10.85% of its fair market value of" Old GAF's assets. (*Id.* ¶ 40). Alleged in the alternative, "the assets and liabilities" assumed by Edgecliff "include the assets and liabilities of the Linden Site." (*Id.* ¶ 41). In 1989, Old GAF was dissolved and Newco Holdings "changed its name to GAF Corporation" ("New GAF"). (*Id.* ¶ 43). "That same day, GAF Chemicals Corporation was merged into Dorset[], which was then renamed GAF Chemicals Corporation" ("GAF Chemicals"). (*Id.* ¶ 43).

In 1991, GAF Chemicals "entered into a reorganization agreement that created" International Specialty Products Inc., and its subsidiary" IES. (*Id.* ¶ 47). That year, IES entered "an 'Assumption of Liabilities and Continuing Obligations' agreement 'in favor of' GAF chemicals and New GAF." (*Id.* ¶ 48). "Under this agreement, IES assumed from GAF Chemicals '[a]ll liabilities and obligations relating to the manufacture and sale of specialty chemicals at" the Linden Site. (*Id.* ¶ 49). In 2000, New GAF "merged into" G-I. (*Id.* ¶ 51).

As a result of these mergers, G-I "became the corporate successor to New GAF and, in turn, corporate successor to Old GAF." (*Id.* ¶ 52). Thus, G-I "is the successor-in-interest to Old GAF's liability under CERCLA notwithstanding any assumption of liabilities under the Plan of Complete Liquidation and/or IES's assumption of liabilities under the 'Assumption of Liabilities and Continuing Obligations' agreement." (*Id.* ¶ 53). Additionally, IES "expressly assumed the liabilities of Old GAF." (*Id.* ¶¶ 49, 54). "Alternatively, as the successor to" formerly Edgecliff, "G-I expressly assumed the liabilities of Old GAF." (*Id.* ¶ 55).

In 1998, IES "indicated that it was a successor to Old GAF with respect to the" Linden Site. (*Id.* ¶ 57). In response to an EPA letter "sent to several potentially responsible parties" or ("PRP"), IES made "a good faith offer to perform" the "remedial investigation and feasibility

3

study" ("RI/FS") to help "finance and/or perform the RI/FS" at the Linden Site. (*Id.* ¶¶ 60-61). In 1999, IES and the EPA "entered into an Administrative Order on Consent" ("AOC") "requiring IES to perform RI/FS work at" the Linden Site. (*Id.* ¶ 62). In 2013, IES "completed" RI and FS Reports regarding the RI/FS work at the Linden site. (*Id.* ¶¶ 63-64).

On July 8, 2022, IES filed a motion to dismiss.[2] On August 1, 2022, Plaintiff opposed. On August 8, 2022, IES replied.

The Court entered the May 7 Order that denied IES' motion to dismiss. The Court found that Plaintiff's Complaint sufficiently alleged successor liability under an "assumption of liability theory" and that Section 107(e)(1) does not preclude a claim under Section 107(a) under CERCLA. On May 21, 2024, IES filed the instant motion to reconsider the May 7 Order. ("IES' Mov. Br.") (ECF No. 59). On June 14, 2024, Plaintiff opposed the motion. ("Pl. Opp. Br.") (ECF No. 63). This matter is ripe for consideration.

## II.     **LEGAL STANDARD**

Reconsideration "is an extraordinary remedy that is to be granted very sparingly" because "[t]he standard of review involved in a motion for" reconsideration is "quite high. . . ." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002) (citations and internal quotations omitted); *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994) (citation omitted). The standard "is an exacting one." *Ivan v. Cnty. of Middlesex*, 612 F. Supp. 2d 546, 550 (D.N.J. 2009).

L. Civ. R. 7.1(i) "allow[s] a party to seek a motion for reconsideration if the party believes the judge has overlooked certain matters or controlling decisions in rendering the original decision." *Ivan*, 612 F. Supp. 2d at 550. "The Third Circuit has held that the purpose of a motion

---

[2] G-I did not join in IES's motion to dismiss and Answered the Complaint. (ECF Nos. 26, 28).

for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 550 (internal quotation marks, ellipses, and citations omitted). "A reconsideration motion, however, may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised before a judgment has been entered." *Id.* at 550-51 (internal quotation marks and citation omitted). Thus, parties must demonstrate "more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Id.* at 551 (internal quotation marks and citations omitted).

To prevail, the moving party must show "at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court" issued the order or judgment; or "(3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 677 (citation omitted). Reconsideration is granted "only when dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered." *Ivan*, 612 F. Supp. 2d at 551 (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. The Court Will Not Reconsider the May 7 Order

IES submits that reconsideration of the May 7 Order is warranted on two primary grounds: (1) that the Court "misinterpreted and erroneously relied upon" *U.S. v. General Battery*, 423 F.3d 294 (3d Cir. 2005) in two respects, (i) the Court's Opinion "suggests that an entity can become a successor by merely assuming a liability–even in the absence of a transaction to purchase all, or substantially all, of the assets of another entity," contrary to *General Battery*, which did not expand upon fundamental common law principles of successor liability, (IES' Mov. Br. at 1) and (ii) that

5

the Court "overlooked *General Battery's* instruction to apply the 'general doctrine of successor liability in operation in most states'" (IES' Mov. Br. at 2 (citing *General Battery*, 423 F.3d at 304-05)); and (2) § 107(e) nullifies any alleged transfer of CERCLA liability. (IES' Mov. Br. at 12-15). The Court addresses each argument in turn.[3]

### i. The Court Did Not Misinterpret or Erroneously Rely Upon *General Battery*

Contrary to IES' assertion that the Court's application of the assumption of liability exception is "in direct contravention of Third Circuit precedent," (IES' Mov. Br. at 2), it is well established in Third Circuit CERCLA precedent. *See, e.g.*, *Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 243 (3d Cir. 2005) (finding that buyer contracting to "assume and become liable for…any and all liabilities" effectively assumed CERCLA liability); *Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 565-66 (3d Cir. 1997) ("We will not address the possible application of the de facto merger doctrine to this case because a more direct route to demonstrating Beazer's successor liability is apparent. Specifically, Beazer *is liable under the first exception, since it assumed all of ALT's liabilities* in June 1954.") (emphasis added); *see also In re Tutu Wells Contamination Litigation*, 994 F.Supp. 638, 676 (D.V.I. 1998) ("The Third Circuit stated quite simply that, '[a]n agreement entered into prior to the passage of CERCLA can allocate CERCLA liabilities'" (citing *Aluminum Co.*, 124 F.3d at 565 (quoting *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206, 211 (3d Cir.1994))); *SmithKline Beecham Corp. v. Rohm and Haas Co.*, 89 F.3d 154, 159–60 (3d Cir.1996) (construing pre-CERCLA agreement, covering "[a]ll material liabilities. . .whether accrued, absolute, contingent or otherwise," to include CERCLA liabilities). *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308-09 (3d Cir. 1985) (enumerating the

---

[3] IES repeats similar arguments raised in its motion to dismiss, which is not permitted on reconsideration. *See NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996); *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 532 (D.N.J. 1998).

assumption of liability exception in a non-CERCLA context); *U.S. v. Sunoco, Inc.*, 637 F.Supp.2d 282, 287 (E.D. Penn. 2009) (noting "[o]ne exception to this rule is that successor liability can be created if the buyer contractually agrees to assume the seller's liabilities." (citing *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 464 (3d Cir.2006))).

Additionally, almost all other courts of appeal have enumerated the assumption of liability exception when considering successor liability in the CERCLA context. *See John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401, 408 (1st Cir. 1993); *New York v. Nat'l Servs. Indus., Inc.*, 352 F.3d 682, 685 (2d Cir. 2003); *United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992); *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1300–01 (6th Cir. 1992); *N. Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 651 (7th Cir. 1998), *overruled on other grounds by Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010); *United States v. Mexico Feed & Seed Co.*, 980 F.2d 478, 487 (8th Cir. 1992); *Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358, 361 (9th Cir. 1997); *Ekotek Site PRP Comm. v. Self*, 984 F. Supp. 994, 999 (D. Utah 1996) (noting that the 10th Circuit has not addressed successor liability, but recognizing the express assumption theory of successor liability) (citations omitted).

Addressing IES's second *General Battery* assertion, rather than "overlook[ing] *General Battery's* instruction to apply the 'general doctrine of successor liability in operation in most states[,]'" the Court's opinion embraced *General Battery's* instruction. The *General Battery* Court stated:

> [W]e are mindful of [*United States v.*] *Bestfoods*, where the Supreme Court held that CERCLA incorporates, but does not expand upon, "fundamental" common law principles of indirect corporate liability. 524 U.S. [51,] 62–64, 118 S. Ct. 1876 [1998]. *The general rule of corporate successorship accepted in most states is nonliability for acquiring corporations, with the following exceptions:*
> *The purchaser may be liable where: (1) it assumes liability*; (2) the transaction amounts to a

7

> consolidation or merger; (3) the transaction is fraudulent and intended to provide an escape from liability; or (4) the purchasing corporation is a mere continuation of the selling company.
>
> *Polius* [*v. Clark Equip. Co.*, 802 F.2d 75, 78] (3d Cir. 1986) (stating general rule); 15 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 7122, at 227–48 (perm. ed., rev. vol. 1999) (collecting cases).

*General Battery*, 423 F.3d at 305 (emphasis added). The *General Battery* Court explicitly found the four enumerated exceptions, *including the assumption of liability exception*, did *not* expand upon fundamental common law principles of indirect corporate liability, but rather *was part of* the general rules accepted in most states.

At this early juncture, affording Plaintiff all reasonable inferences, the allegations in the Complaint, and the tendency of courts to deny motions to dismiss if the complaint alleges sufficient "successor liability allegations" because the information needed to "substantiate" a plaintiff's claim "of successor liability" is "likely in the possession" of the defendant, Plaintiff stated a plausible Section 107(a) claim. *See NL Indus., Inc. v. Old Bridge Twp.*, No. 13-3493, 2014 WL 12631479, at *10 (D.N.J. June 30, 2014) (holding "successor liability allegations [based on information and belief] are enough to satisfy the Rule 8 pleading standard" so long as the defendant is on notice); *see also Bolinger v. RMB, Inc.*, No. 18-15446, 2023 WL 2612259, at *4 (D.N.J. Mar. 21, 2023) (noting that "not allowing Plaintiff's proposed Amended Complaint to proceed at this early stage of the litigation would be inappropriate as the information Plaintiff needs to substantiate its claims of successor liability are likely in the possession of [defendant]").

### ii. The Court Did Not Misread CERLA § 107(e)

The Court disagrees with IES' interpretation of § 107(e). Section 107(e)(1) of CERCLA provides:
> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator

8

of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1).

IES' argument that § 107(e) voids any alleged transfer of CERCLA liability lacks merit.[4] As the Third Circuit has explained, Section 107(e) means "responsible parties can lawfully allocate CERCLA response costs among themselves while remaining jointly and severally liable to the government for the entire cleanup." *See SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 158 (3d Cir. 1996) (cleaned up); *see also Beazer East Inc. v. Mead Corp.*, 34 F.3d 206, 211 (3d Cir. 1994) ("§ 9607(e)(1) renders ineffective any attempt to *completely* 'transfer' liability" (emphasis added, citation omitted)); *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 107 (3d Cir. 1994) (Under § 107(e)(1) "responsible parties cannot contract away their liability under CERCLA for cleaning up a release, but . . . may allocate the ultimate financial burden of that clean-up by agreements among themselves" (citations omitted)); *Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 242 (3d Cir. 2005) ("Under [S]ection 107(e) of CERCLA . . ., [a PRP] may not divest itself of liability for its pollution activity." (citations omitted)).

Other courts have similarly interpreted Section 107(e) contrary to IES' position. *See, e.g., United States v. NCR Corp.*, 840 F. Supp. 2d 1093, 1097 (E.D. Wis. 2011) decision on reconsideration (E.D. Wis. 2012) (emphasis in original) (CERCLA's prohibition on a company divesting itself of CERCLA liability "is not the same as saying that CERCLA prohibits a non-liable party from entering an agreement to take on direct liability *in addition to* that of the already-liable party: the only condition CERCLA imposes is that the directly liable party must remain

---

[4] IES advanced this same argument in the parallel state court action, which the state court rejected. (*See* ECF No. 16, at 8 n.2).

liable."); *Hobart Corp. v. Dayton Power & Light Co.*, 407 F. Supp. 3d 732, 742 (S.D. Ohio 2019) ("[T]he assumption of liability [by the transferee] did not *extinguish* the liability of [the transferor]. Such a *transfer* of liability is prohibited by statute." (emphasis in original)).

Additionally, the decision in *United States v. Lang* is instructive. In *Lang*, the court addressed the precise argument advanced by IES here: that a party who had contracted to assume certain CERCLA liabilities from its parents' company was not liable under Section 107(e) because only the parent company could be liable to the United States, since Section 107(e)(1) "prevents companies from shifting their CERCLA liability." 864 F. Supp. 610, 612 (E.D. Tex. 1994). The *Lang* Court, rejecting that contention stated that such an "argument demonstrates a fundamental misunderstanding of § 107(e)(1)" and explained, Section 107(e) "does nothing to prevent [successor corporations] from being added to the chain of cleanup accountability." *Id.* The court further explained that:

> The first sentence of § 107(e)(1) merely states that once an entity is found to be a responsible party, it cannot extricate itself from the CERCLA liability web simply by entering into an indemnification agreement with another party. Accordingly, § 107(e)(1) is not a shield which prevents ACC from attaining the status of a successor corporation.

*Id.* at 614 (footnote omitted). Similarly, IES cannot use Section 107(e)(1) as a shield to prevent itself from being added to the chain of cleanup accountability.

IES' assertion that the Court misinterpreted *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1233 (E.D. Cal. 1997) lacks merit and merely repeats their previously asserted argument in its motion to dismiss, which the Court previously addressed.[5] The *Iron Mountain Mines* Court stated:

---

[5] IES states that, "[i]n reaching its decision, the Court first notes that *Iron Mountain Mines* 'does support IES's position,' but pages later states that it 'favors Plaintiff's position rather than that of IES.' (*See* IES' Mov. Br. at 12). A reading of the Court's full analysis of *Iron Mountain Mines* indicates that the Court found the case favored Plaintiff,

10

> Moreover, the intent of § 107(e)(1) is to expand, not restrict, the group of potentially responsible parties. Section 107(e)(1) ensures that if a party is found liable for response costs under § 107(a), "that party cannot escape liability by means of a contract with another party." *John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401, 405 (1st Cir. 1993). Thus, if Mountain Copper and its subsidiaries still existed, the Government could pursue those corporations for payment of response costs as an owner and operator of Iron Mountain Mine. Any attempted transfer of CERCLA liability would be nullified under § 107(e)(1). Section 107(e)(1) does not impinge on successor liability, however. The Government still would be able to pursue Rhône-Poulenc on the ground that it is Mountain Copper's corporate successor.

987 F. Supp. at 1239 n.12. The relevant quotation makes clear not only that Section 107(e)(1) prohibits liable parties under CERCLA from divesting themselves of liability, but also that the government could pursue recovery from the corporation that assumed liability via contract. *Iron Mountain Mines* supports Plaintiff's interpretation of Section 107(e)(1).

## IV. CONCLUSION

For the reasons set forth above, IES' motion to reconsider (ECF No. 59) the May 7 Order is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: December 2nd, 2024

JULIEN XAVIER NEALS
United States District Judge

---

and that the sentence IES cites on page 10 of the Court's opinion merely omitted the word "not" and should read "does [not] support IES's position."

11