**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISP ENVIRONMENTAL SERVICES, INC., and G-I HOLDINGS, INC.,<br><br>Defendants. | Civil Action No. 22-4344 (JXN)(JBC)<br><br>**OPINION** |

**NEALS**, District Judge

This opinion addresses part of a long-running lawsuit about who must pay to clean up the LCP Chemicals, Inc. Superfund Site in Linden, New Jersey ("LCP Site"). The United States ("Government") asserts that ISP Environmental Services, Inc. ("IES"), International Specialty Products, Inc. ("ISP"), Ashland, Inc. ("Ashland") (together, "ISP Parties"), and G-I Holdings, Inc. ("G-I") are responsible. The ISP Parties argue that G-I Holdings, Inc. ("G-I") and Standard Building Solutions Inc. ("Standard") assumed liability for the LCP Site.

G-I moved to partially dismiss the ISP Parties' amended crossclaim. (ECF No. 221.)[1] Standard moved to partially dismiss the ISP Parties' third-party complaint. (ECF No. 222.)[2] The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[3] 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, G-I's motion (ECF No. 221) is **GRANTED in part** and Standard's motion (ECF No. 222) is **GRANTED**.

---

[1] The ISP Parties opposed (ECF No. 224), and G-I replied (ECF No. 229).

[2] The ISP Parties opposed (ECF No. 225) and Standard replied (ECF No. 228).

[3] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

# I. BACKGROUND[4]

## A. Statement of Facts[5]

### *i. The LCP Site*

From the early 1950s to 1971, the GAF Corporation ("Old GAF") built and ran a chlor-alkali manufacturing plant ("Chemical Plant") on the LCP Site, a twenty-six-acre patch of tidal wetlands in Linden.[6] (*See* Am. Crosscl. ¶¶ 26–30, ECF No. 173; Third-Party Compl. ¶¶ 70–72, ECF No. 66.) Old GAF sold the LCP Site to Linden Chlorine Products, Inc. ("LCP") in 1972. (Am. Crosscl. ¶ 31.) LCP ran the Chemical Plant until the 1980s. (*Id.* ¶¶ 32–34.) During its three decades of operation, the Chemical Plant pumped twenty tons per day of mercury-filled sludge into a man-made lagoon. (Compl. ¶¶ 19, 24–25, ECF No. 1.) The lagoon discharged into the South Branch Creek, contaminating the surrounding waterways with toxic chemicals. (*Id.* ¶¶ 26–27.)

### *ii. The Corporate History of Defendants*

#### a. Old GAF Transfers its Liabilities to Dorset and Edgecliff

When it liquidated in 1989, Old GAF distributed "its assets and liabilities" to five newly created companies, two of which are relevant here: Dorset Inc. ("Dorset") and Edgecliff Inc. ("Edgecliff").[7] (Third-Party Compl. ¶ 26; Am. Crosscl. ¶ 39.) All five companies were subsidiaries of G Industries Inc. ("G Industries"), itself a subsidiary of G-I Holdings Inc. ("Old G-I"). (Am.

---

[4] The Court derives the facts from the Complaint (*see* Compl., ECF No. 1), Amended Crossclaim (*see* Am. Crosscl., ECF No. 173), and Third-Party Complaint (*see* Third Party Compl., ECF No. 66), which are accepted as true. *Sheridan v. NGKMetals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[5] Given the parties' familiarity with the case, the Court recounts only those facts necessary for the present motions. For a fuller recitation of the facts, see *United States v. ISP Env't Servs. Inc.* ("*ISP I*"), No. 22-4344, 2024 WL 4948825 (D.N.J. Dec. 2, 2024), and *United States v. ISP Env't Servs. Inc.* ("*ISP II*"), No. 22-4344, 2025 WL 2621870 (D.N.J. Sept. 11, 2025).

[6] The LCP Site is "currently identified on the tax map of the City of Linden as Block 587, Lots 3.01, 3.02, and 3.03." (Am. Crosscl. ¶ 26.)

[7] The other three companies were Merrick Inc., Perth Inc., and Clover Inc.

Crosscl. ¶ 43.) Old G-I was a subsidiary of Newco Holdings Inc., later renamed GAF Corporation ("New GAF"), the "ultimate parent company to all of the subsidiaries that received assets and liabilities from Old GAF." (*Id.*)

**b. Edgecliff Becomes GAF Building, Which Becomes Standard**

Edgecliff received "all assets and liabilities relating to Old GAF's commercial and residential roofing materials business and specifically assumed liabilities arising out of '(A) shingle claims for discontinued products, (B) plant shutdowns, and (C) environmental claims from plants no longer operating and from oil waste pollution.'" (*Id.* ¶ 40.) Soon after, Edgecliff was renamed GAF Building Materials Corporation ("GAF Building"). (*Id.* ¶ 44.)

In 1994, GAF Building transferred all its assets to a subsidiary, the newly-formed GAF NEWCO, Inc. (*Id.* ¶¶ 52–55.) GAF NEWCO then changed its name to the Building Materials Corporation of America ("BMCA"). (*Id.* ¶ 56.) BMCA continued GAF Building's operations but went through several name changes. (*See id.* ¶¶ 57–58.) In 2022, BMCA became Standard. (*Id.* ¶ 58.)

**c. Dorset Becomes GAF Chemicals, Which Gets Spun Off Into ISP**

Dorset received "all assets and liabilities relating to Old GAF's then-ongoing chemicals businesses and specifically assumed liabilities arising out of '(A) the production of Amiben; (B) Project Aware environmental clean up costs; and (C) environmental claims arising out of plants currently operating in the Chemicals Businesses.'" (*Id.* ¶ 41.) Dorset was renamed GAF Chemicals Corporation ("GAF Chemicals"). (*Id.* ¶ 45.)

GAF Chemicals reorganized in 1991, transferring "substantially all of its operating assets and liabilities to" ten different subsidiaries. (*Id.* ¶ 46.) One of those subsidiaries was ISP 9 Corp. (*Id.* ¶ 47.) As part of the reorganization, ISP 9 Corp. assumed,

> All liabilities and obligations relating to the manufacture and sale of specialty chemicals at Linden, NJ, known and unknown, contingent or otherwise, including liabilities for the remediation of the Linden site and those liabilities shown on the balance sheet for ISP 9 Corp. dated as of May 8, 1991.

(*Id.* ¶ 49.) ISP 9 Corp. was renamed IES. (*Id.* ¶ 50.) GAF Chemicals then transferred all ten subsidiaries to ISP, another GAF Chemicals subsidiary. (*Id.* ¶ 51.)

In 1996, New GAF decided to spin ISP off "from the rest of the GAF-related entities." (*Id.* ¶ 59.) To do so, New GAF transferred ISP and its subsidiaries (including IES), to a new company, ISP Holdings, Inc. ("ISP Holdings"). (*Id.* ¶ 60.) ISP Holdings entered a 1996 Indemnification Agreement with New GAF, Old G-I, G Industries and GAF Chemicals, wherein the GAF entities agreed to indemnify ISP Holdings and its subsidiaries, affiliates, and successors against all GAF liabilities, while ISP Holdings agreed to indemnify the GAF related entities against all ISP Holdings liabilities. (*Id.* ¶¶ 61–62.) A year later, ISP Holdings became fully independent of GAF. (*Id.* ¶ 63.) Following the spin-off, ISP Holdings merged with ISP and continued operating under the ISP name. (*Id.*) Ashland purchased ISP and its subsidiaries, including IES, in 2011. (*Id.* ¶ 95.)

**d. The Remaining GAF Entities Become G-I**

In 2000, New GAF, Old G-I, GAF Chemicals, GAF Building, and G Industries merged and reorganized into G-I. (*Id.* ¶ 70.)

***iii. The Cleanup***

In 1995, the Environmental Protection Agency ("EPA") found mercury in the soil at the LCP Site. (Compl. ¶ 56.) Three years later, the EPA notified several potentially responsible parties, including IES, of their possible liability for cleaning up the LCP Site and requested "a good faith offer from them to finance and/or perform" a remedial investigation and feasibility study ("RIFS") at the LCP Site. (*Id.* ¶ 60.) IES responded to the EPA and offered to perform the RIFS. (*Id.* ¶ 61.)

IES's response referred to Old GAF as IES's "predecessor." (*Id.*) According to the ISP Parties, however, ISP's majority shareholder "volunteered" IES to do the work because neither GAF Building "nor its parent companies" had the financial ability to do so. (Am. Crosscl. ¶¶ 89, 91.)

In 1999, IES and the EPA entered an Administrative Order on Consent ("AOC") for IES to perform RIFS work at the LCP Site. (*Id.* ¶ 93.) The ISP Parties claim IES entered the AOC with "the understanding that IES would be paid back through the 1996 Indemnification Agreement and that after the AOC was completed, G-I or its predecessor(s) would claim responsibility for the LCP Site liability." (*Id.*) IES completed RIFS work at the LCP Site in 2013. (*Id.* ¶ 96.) The RIFS "confirmed the presence of mercury and other hazardous substances" in soil and groundwater at the LCP Site and in sediment at the South Branch Creek. (Compl. ¶ 65.) IES alleges the RIFS work cost "millions of dollars." (Third-Party Compl. ¶ 100.)

In 2014, the EPA "demanded remedial action as a result of the discharge of hazardous substances at the LCP Site," and selected a remedy to address the contamination. (Am. Crosscl. ¶ 99.) The EPA asked IES to "fully finance and/or perform remedial design and remedial action" at the LCP Site. (Compl. ¶ 77.) IES refused, arguing "it was not a successor to Old GAF's liability" at the LCP Site. (*Id.* ¶ 78.) A year later, the EPA ordered IES to perform the work under CERCLA § 106. (*Id.* ¶ 80; *see also* Am. Crosscl. ¶ 101.) IES notified the EPA "it would not comply with the Order," (Compl. ¶ 83), arguing IES "is not a potentially responsible party for the LCP Site under CERCLA and that it is not the corporate successor to Old GAF," (Am. Crosscl. ¶ 102).

**B. Procedural History**

***i. The Government sues IES and G-I***

In 2022, the Government sued IES and G-I under CERCLA § 107(a) to recover the costs of cleaning up the LCP Site. (*See* Compl. ¶¶ 73–76, 87–98.) The Government also sought civil

penalties and punitive damages under CERCLA §§ 106(b) and 107(c)(3) for IES's failure to comply with the EPA's 2015 remediation order.[8] (*Id.* ¶¶ 77–86, 99–109.)

***ii. The ISP Parties sue G-I***

Motion practice ensued. G-I filed crossclaims against IES and ISP, arguing both corporations assumed liability for the LCP Site. (See G-I Crosscl. against IES ¶¶ 2–5; ECF No. 26; G-I Crosscl. against ISP ¶¶ 2–5, ECF No. 28.) ISP and IES responded with their own crossclaim, asserting G-I is "the corporate successor to Old GAF," and is therefore jointly and severally liable under CERCLA. (ISP Crosscl. ¶¶ 12, 23, ECF No. 36.)

When the United States sued G-I and IES, G-I and the ISP Parties were already litigating many of the same issues in New Jersey state court ("New Jersey Action"). (Stipulation at 3, ECF No. 172); *see also Ashland Inc., et al. v. G-I Holdings Inc., et al.*, No. 2331-15. In the New Jersey Action, the ISP Parties sued G-I for a declaration of corporate successorship; declaratory judgment for breach of the 1996 Indemnification Agreement; breach of the implied covenant of good faith and fair dealing; and unjust enrichment. (*See* Stipulation at 3 n.2.) In light of the parallel state and federal proceedings, the parties in this action agreed, in an April 7, 2025 Stipulation, that: (1) the parties to the New Jersey Action would voluntarily dismiss the New Jersey Action; (2) the ISP Parties would file an amended crossclaim to assert in this case any claims they made in the New Jersey Action; and (3) no party to the New Jersey Action would be permitted to file a Rule 12(b)(6) motion to dismiss as to any claims in this action that "are substantially the same as their counterparts in the [New Jersey] Action." (*Id.* at 3–6.) However, the Stipulation did not prohibit

[8] The Court has jurisdiction over the Government's complaint pursuant to 28 U.S.C. §§ 1331, 1345 and 1355, and 42 U.S.C. §§ 9613(b). Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b).

the parties from moving to dismiss "any claim, or any portion of a claim, that materially differs from that in the [New Jersey] Action." (*Id.* at 6.)

Consistent with the Stipulation, the ISP Parties filed an Amended Crossclaim on April 14, 2025.[9] (Am. Crosscl.) The Amended Crossclaim includes claims for: (1) contribution under CERCLA § 113 ("Count I"); (2) a declaration that G-I is liable for LCP Site response costs ("Count II"); (3) a declaration that G-I is the corporate successor to Old GAF, New GAF, Old G-I, G Industries, GAF Chemicals, and/or GAF Building; and that the ISP Parties are not successors to the same ("Count III"); (4) indemnification under the 1996 Indemnification Agreement for cleaning up the LCP Site, off-site waterways, and other contaminated sites ("Count IV"); (5) a declaration as to indemnification ("Count V"); and (6) breach of the implied covenant of good faith and fair dealing as to the 1996 Indemnification Agreement ("Count VI"). (*Id.* at 17–28.)

G-I moved to dismiss Count III under Rule 12(b)(1); Count VI in its entirety under Rule 12(b)(6); and Counts IV and V under Rule 12(b)(6) to the extent they seek relief for Ashland. (See G-I Moving Br., ECF No. 221-5.) G-I argues (1) Counts III to VI materially differ from the New Jersey Action claims; (2) Count III is unripe; (3) the ISP Parties' alleged course of conduct does not give rise to a breach of the implied covenant of good faith and fair dealing; and (4) Ashland should be dismissed because no regulator has ever asked Ashland to pay for cleaning up the LCP Site. (*See generally id.*) The ISP Parties opposed (*see* Opp'n to G-I, ECF No. 224), and G-I replied (G-I Reply, ECF No. 229).

---

[9] The Court has jurisdiction over the Amended Crossclaim pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 9613(b) and 6972(a), and 28 U.S.C. § 1367. Venue is proper under 42 U.S.C. §§ 9613(b) and 6972(a).

### *iii. The ISP Parties sue Standard*

The ISP Parties filed a Third-Party Complaint against Standard and many other companies[10] they claim are responsible for the costs of cleaning up the LCP Site, off-site waterways, and other contaminated sites.[11] (*See* Third-Party Compl.) The Third-Party Complaint includes claims for: (1) cost recovery under CERCLA § 107(a) ("Count I"); (2) declaratory judgment under CERCLA § 107(a) ("Count II"); (3) contribution under CERCLA § 113(f) ("Count III"); (4) declaratory judgment under CERCLA § 113(g)(2) ("Count IV"); and (5) contribution under the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 ("Count V").

Standard moved to dismiss under Rule 12(b)(6), arguing that (1) the ISP Parties fail to adequately allege Standard is liable as a successor to Old GAF; and (2) Standard cannot be held derivatively liable for cleanup costs at the LCP Site. (*See* Standard Moving Br., ECF No. 222-8.) The ISP Parties opposed (Opp'n to Standard, ECF No. 225), and Standard replied (Standard Reply, ECF No. 228).[12]

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain

[10] Linde Inc., Linden Property Holdings, the Chemours Company, E. I. du Pont de Nemours and Company, Corteva, Inc., Dow, Inc., and DuPont de Nemours, Inc. (with Standard, "Third-Party Defendants").

[11] The Court has jurisdiction over the Third-Party Complaint pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 9613(b) and 6972(a), and 28 U.S.C. § 1367. Venue is proper under 42 U.S.C. §§ 9613(b) and 6972(a).

[12] The Court notes this case is trifurcated. Phase I deals with liability at the LCP Site. (*See* Nov. 1, 2024 Order, ECF No. 135.) Phase II deals with the divisibility defense to joint and several liability, as well as the quantum of recoverable costs, penalties, and damages. (*Id.*) Phase III deals with any remaining third-party claims, including those for off-site waterways and other contaminated sites, as well as equitable allocation and common law claims. (*See* Feb. 4, 2026 Order, ECF No. 216.)

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all of the plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

**B. Rule 12(b)(1)**

A complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). And, under Rule 12(b)(1), "a defendant may move to dismiss a matter for want of standing 'because standing is a jurisdictional matter.'" *Del. River Port Auth. v. Walsh*, No. 24-8186, 2025 WL 2172530, at *3 (D.N.J. July 31, 2025) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *Common Cause of Pa. v. Pennsylvania,* 558 F.3d 249, 257 (3d Cir.2009)). A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter

jurisdiction of the court." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "As such, a facial challenge 'calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party.'" *Walsh*, 2025 WL 2172530, at *4 (quoting *Aichele*, 757 F.3d at 358).

A factual attack, on the other hand, asserts "there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. In a factual attack, the Court may look beyond the facts alleged in the pleading. *Id.*

## III. DISCUSSION

Congress enacted CERCLA "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Litgo N.J. Inc. v. Comm'r N.J. Dep't of Env't Prot.*, 725 F.3d 369, 378 (3d Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009)). To this end, CERCLA §§ 107(a) and 113(f) "allow private parties to recover expenses associated with cleaning up contaminated sites." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 131 (2007).

CERCLA § 107(a) "gives private parties the right to recover costs incurred in cleaning up a waste site from 'potentially responsible parties.'" *Litgo N.J.*, 725 F.3d at 378 (quoting *Burlington N.*, 556 U.S. at 608–09). To prevail on a CERCLA § 107(a) claim, a party must show:

> (1) the property at issue is a CERCLA "facility"; (2) there has been a "release" of a "hazardous substance"; (3) the defendant falls within at least one of the categories of "covered persons" defined in CERCLA § 107(a); [and] (4) the costs sought by the plaintiff constitute recoverable "costs of response[.]"

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 862 (D.N.J. 2003) (quoting 42 U.S.C. § 9607(a)).

CERCLA § 113(f) provides "[a]ny person may seek contribution from any other person who is liable or potentially liable" under § 107(a). 42 U.S.C. § 9613(f). Contribution is "the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'" *Atl. Rsch. Corp.*, 551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004)). "To resolve contribution claims, section 113 provides that 'the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.'" *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1121 (3d Cir. 1997) (quoting 42 U.S.C. § 9613(f)(1)).

### A. G-I's Motion to Partially Dismiss the Amended Crossclaim

#### *i. The Stipulation Bars G-I's Motion to Dismiss Counts IV, V, and VI*

As a threshold matter, the ISP Parties argue G-I's motion violates the Stipulation. (Opp'n to G-I at 12–17.) The Stipulation bars parties to the New Jersey Action from moving to dismiss claims in this action that are "substantially the same as their counterparts in the [New Jersey] Action." (Stipulation at 5–6.)

Causes of action are substantially similar when: (1) "the acts complained of and the demand for relief are the same," meaning, "the wrong for which redress is sought is the same in both actions"; (2) "the theory of recovery is the same"; (3) "the witnesses and documents necessary at trial are the same," i.e., "the same evidence necessary to maintain the second action would have been sufficient to support the first"; and (4) "the material facts alleged are the same."[13] *Smith &*

[13] Citing out-of-circuit cases about *Colorado River* abstention, the ISP Parties argue two claims are substantially the same when they "center around common facts and issues." (Opp'n to GI at 12–13 (quoting *Young Money Entm't, LLC v. Universal Music Grp., Inc.*, No. 16-2096, 2016 WL 9450681, at *5 (C.D. Cal. July 29, 2016)). This case does not implicate *Colorado River* abstention and the ISP Parties do not explain why a *Colorado River* framework should apply. But even in *Colorado River* cases, claims are not substantially the same where they seek different forms of relief. *See Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 385 (D.N.J. 2015) ("Because damages are an issue in only one of these actions, they are not parallel.")

*Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 105 F.4th 67, 76 (3d Cir. 2024) (quoting *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 606–07 (2015)).

Count III of the Amended Crossclaim is not substantially similar to any claim in the New Jersey Action. In the New Jersey Action, the ISP Parties sought a declaration that G-I is the successor to Old GAF and/or GAF Chemicals. (*See* G-I Ex. A ("N.J. Compl.") ¶ 114, ECF No. 221-2.) Now, ISP seeks to declare G-I the successor of Old GAF, New GAF, Old G-I, G Industries, GAF Chemicals, and GAF Building. (Am. Crosscl. ¶ 127.) This is a more expansive declaration than before, so the relief is different. And the evidence necessary to declare G-I a corporate successor of New GAF, Old G-I, G Industries, and GAF Building is different than the evidence necessary to declare G-I a corporate successor of Old GAF and GAF Chemicals. New GAF, Old G-I, G Industries, and GAF Building engaged transactions, mergers, and reorganizations separate and apart from those involving Old GAF and GAF Chemicals. Because the scope of the relief and evidence is different, Count III in this action is not substantially similar to any cause of action in the New Jersey Action, and the Stipulation does not bar G-I's motion to dismiss Count III.

Counts IV and V (Indemnification) of the Amended Crossclaim, however, are substantially similar to Count II of the New Jersey Complaint. The ISP Parties were plaintiffs in the New Jersey Action. Yet only ISP and IES sought a declaration that G-I was "contractually obligated" under the 1996 Indemnification Agreement to indemnify ISP and IES for any environmental liability at the LCP Site. (*See* N.J. Compl. ¶ 121.) In the Amended Crossclaim, all three ISP Parties seek indemnification from G-I for "any and all response costs incurred, or that may be incurred in the future by IES, ISP and/or Ashland for hazardous substance contamination on, at, under, from or to the LCP Site." (Am. Crosscl. ¶ 144.) Both claims are substantially similar. The wrongs remain the same. In both this case and the New Jersey Action, the ISP Parties argue G-I did not honor its

agreement to indemnify ISP, IES, and its successors from LCP Site liability. (*Compare* N.J. Compl. ¶¶ 116–17 *with* Am. Crosscl. ¶¶ 130–38.) The theory of recovery is the same. In both actions, the ISP Parties argue that G-I breached the 1996 Indemnification Agreement. And because both claims center upon the 1996 Indemnification Agreement, the material facts and evidence are the same. As far as the Court can tell, the only difference between the claims asserted here and in state court is that Ashland (a party to in the New Jersey Action) now joins in ISP and IES's claim. But the record does not demonstrate how this effects a *material* change. Nor does G-I persuasively explain how it would. Accordingly, the Court finds Counts IV and V of the Amended Crossclaim substantially similar to Count II of the New Jersey Complaint.

Similarly, the Court finds Count VI (Implied Covenant) of the Amended Crossclaim is substantially the same as Count III of the New Jersey Complaint. In the New Jersey Action, ISP and IES claimed the 1996 Indemnification Agreement gave rise to an implied duty of good faith and fair dealing, which G-I violated by "ignoring Plaintiffs' requests and refusing to participate in the necessary environmental investigation and remediation of the LCP Site or to indemnify [IES and ISP Holdings]." (N.J. Compl. ¶ 127.) In the Amended Crossclaim, the ISP Parties argue the 1996 Indemnification Agreement gave rise to an implied duty of good faith and fair dealing, which G-I breached when it "embarked on a course of conduct designed to deprive [the ISP Parties] of their indemnity rights," (Am. Crosscl. ¶ 150), including G-I "refusing to acknowledge its liability for the LCP Site after IES completed the AOC and using IES's performance of the AOC to try to prevent IES from disclaiming responsibility for the LCP Site." (*Id.* ¶ 151). In short, both claims assert G-I breached its duty of good faith and fair dealing under the 1996 Indemnification Agreement when it refused to participate in the LCP Site investigation and remediation. The wording may be different, but the legal theories, relief, and facts are the same. Accordingly, the

Court finds Count VI of the Amended Crossclaim is substantially similar to Count III of the New Jersey Complaint.

Because Counts IV, V, and VI are substantially similar to causes of action in the New Jersey Complaint, the Stipulation precludes G-I from moving for their dismissal, and G-I's motion to dismiss the Amended Crossclaim is **DENIED** as to Counts IV, V, and VI.[14]

***ii. Count III is Unripe***

G-I argues Count III of the Amended Crossclaim should be dismissed under Rule 12(b)(1) as unripe. The Court agrees.

Article III of the Constitution limits federal courts to hearing only cases and controversies. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538–39 (3d Cir. 2017) (quoting U.S. Const. art. III, § 2). This requirement "has engendered numerous justiciability doctrines that further define the limits of federal jurisdiction." *Armstrong World Indus., Inc. ex rel. Wolfson v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992). "Among these is the ripeness doctrine, which determines when a proper party may bring an action." *Id.* "At its core, ripeness works 'to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Plains All Am.*, 866 F.3d at 539 (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)).

"The parameters of 'ripeness' are especially difficult to define within the context of declaratory judgment actions." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). "This difficulty is due, in large measure, to the fact that declaratory judgments are, of necessity,

[14] The Stipulation, however, does not bar the parties from moving for summary judgment on the New Jersey Action claims. (*See* New Jersey Claims Order 6.)

rendered before an 'accomplished' injury has been suffered." *Id.* (quoting *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)). Accordingly, the Third Circuit applies a "somewhat 'refined' test" for determining whether a declaratory judgment action is ripe. *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (citation omitted). A declaratory judgment action is ripe for review based on "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Id.* (citation omitted).

**a. Adversity**

"Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Obusek*, 72 F.3d at 1154 "[T]he plaintiff must demonstrate that the probability of that future [harm] occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Salvation Army v. Dep't of Cmty. Affs.*, 919 F.2d 183, 192 (3d Cir. 1990)). This does not require "mathematical certainty." *Id.* But the plaintiff must demonstrate a "real and immediate" threat of harm. *Id.* (quoting *Salvation Army*, 919 F.2d at 192).

The ISP Parties claim adversity exists because "various state and federal agencies have asserted and will continue to assert claims against IES based on the erroneous belief that IES is the successor to Old GAF, New GAF, Old G-I, G Industries, [GAF Chemicals] and/or [GAF Building]." (Am. Crosscl. ¶ 124.) The Court is unconvinced. The ISP Parties have not adequately alleged (a) what state or federal agencies have asserted claims, (b) the nature of those claims, (c) when they were filed, or (d) that such claims were filed *because* state and federal regulators erroneously believed IES was the corporate successor to New GAF, Old G-I, G Industries, or GAF Building. At most, the Court gleans that unspecified regulators *may* assert unspecified claims against the ISP Parties, *possibly* based on the theory that IES is the corporate successor to New

GAF, Old G-I, G Industries, and/or GAF Building. This threat of harm is neither "real" nor "immediate."[15]

**b. Conclusiveness**

Conclusiveness examines "whether a declaratory judgment definitively would decide the parties' rights." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir. 2001). "[T]wo concerns are paramount." *Plains All Am.*, 866 F.3d at 543. First, whether the legal status of the parties will "be changed or clarified by the declaration." *Obusek*, 72 F.3d at 1155 (quoting *Step-Saver*, 912 F.2d at 648). Second, whether "further factual development of the case would facilitate decision, so as to avoid issuing advisory opinions, or whether the question presented is predominantly legal." *NE Hub*, 239 F.3d at 344. "A declaratory judgment granted in the absence of a concrete set of facts would itself be a 'contingency,' and applying it to actual controversies which subsequently arise would be an 'exercise in futility.'" *Armstrong World*, 961 F.2d at 412 (quoting *Step-Saver*, 912 F.2d at 648).

ISP seeks inconclusive relief. For one, it is not clear the proposed declaration would change the status of the parties. Even if G-I were the successor to Old GAF, New GAF, Old G-I, G Industries, GAF Chemicals and/or GAF Building, IES could still be found liable for cleanup costs under CERCLA because it expressly assumed liability for the LCP Site in the 1991 GAF Chemicals reorganization. (*See* Am. Crosscl. ¶ 49.) Moreover, the sought-after declaration rests on a large set of undeveloped or hypothetical facts. A successor corporation like G-I is liable where

[15] The ISP Parties argue in their opposition that in 2015, the National Oceanic and Atmospheric Administration ("NOAA") and the Department of the Interior ("DOI") threatened to sue IES for Old GAF's CERCLA liabilities. (*See* Opp'n to G-I at 2–3, 22–24.) But these allegations do not appear in the Amended Crossclaim. (*See generally* Am. Crosscl.) A party cannot use an opposition brief to amend their pleading. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Even if the Court were to consider the ISP Parties' unpled allegations, they do not allege NOAA or DOI threatened to sue (or are still threatening to sue) the ISP Parties *because* either agency erroneously believed IES was the corporate successor to New GAF, Old G-I, G Industries, or GAF Building.

"(1) it assumes liability; (2) the transaction amounts to a consolidation or merger; (3) the transaction is fraudulent and intended to provide an escape from liability; or (4) the purchasing corporation is a mere continuation of the selling company." *United States v. Gen. Battery Corp.*, 423 F.3d 294, 305 (3d Cir. 2005) (quoting *Polius v. Clark Equip. Co.*, 802 F.2d 75, 78 (3d Cir. 1986)). To conclude G-I has inherited *all* the liabilities of six different corporations and their successors, the Court would have to (a) identify each corporation's liabilities, and (b) trace those liabilities across decades of agreements, assignments, transactions, mergers, and reorganizations. Neither set of facts is before the Court.

**c. Utility**

"Practical utility goes to 'whether the parties' plans of actions are likely to be affected by a declaratory judgment,' and considers the hardship to the parties of withholding judgment." *NE Hub*, 239 F.3d at 344–45 (quoting *Step-Saver*, 912 F.2d at 649 n.9). A declaratory judgment "must be of some practical help to the parties." *Obusek*, 72 F.3d at 1155.

The declaration the ISP Parties seek is not useful. Notably, the Government brought this lawsuit based on IES's express assumption of liability, not the theory that IES is the corporate successor to Old GAF, New GAF, Old G-I, G Industries, GAF Chemicals and/or GAF Buildings. *ISP I*, 2024 WL 2013949, at *4. The proposed declaration would not have stopped this lawsuit. Nor have the ISP Parties sufficiently alleged hardship if the Court withholds judgment.

Because the ISP Parties seek a declaration lacking adversity, conclusiveness, or utility, Count III of the Amended Crossclaim is **DISMISSED *without prejudice***.[16]

[16] "A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim. Ordinarily, such a dismissal is 'without prejudice.'" *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980).

### B. Standard's Motion to Partially Dismiss the Third-Party Complaint

Standard moves to dismiss the ISP Parties' third-party claims under Rules 12(b)(6) and 14(a). (Standard Moving Br.) In particular, Standard argues IES fails to allege Standard is liable as a corporate successor to Old GAF. (*Id.* at 12-19.)

#### ***i. Counts III and IV (CERCLA Contribution)***

Corporations can be held liable under CERCLA. *See* 42 U.S.C. § 9601(21) (including "corporation" within the term "person."). "[I]n certain circumstances, a successor corporation may be held liable under CERCLA as a 'person[]' . . . for the acts and omissions of its predecessor corporations." *Stearns & Foster Bedding Co. v. Franklin Holding Corp.*, 947 F. Supp. 790, 810 (D.N.J. 1996). "CERCLA successor liability is a matter of uniform federal law." *Gen. Battery*, 423 F.3d at 298. "Under the well-settled rule of corporate law, where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor." *Polius*, 802 F.2d at 77. But a successor corporation may face CERCLA liability where: "(1) it assumes liability; (2) the transaction amounts to a consolidation or merger; (3) the transaction is fraudulent and intended to provide an escape from liability; or (4) the purchasing corporation is a mere continuation of the selling company." *Gen. Battery*, 423 F.3d at 305 (quoting *Polius*, 802 F.2d at 78). To prove a transaction is a consolidation or merger, the Court must consider whether:

> (1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.
>
> (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

> (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
>
> (4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Id.* "Not all of those factors must be present for a *de facto* merger or continuation to be found." *Munenzon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 208 (D.N.J. 2021). "The crucial inquiry is whether there was an 'intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets.'" *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 73 (3d Cir. 1993) (citation omitted). The Court employs the same analysis in considering whether the purchaser is a "mere continuation" of the seller. *See Pub. Serv. Elec. & Gas Co. v. Cooper Indus., LLC*, 678 F. Supp. 3d 611, 620 (D.N.J. 2023) (noting both exceptions "are often treated in unison.").

As stated previously, the ISP Parties allege that when Old GAF liquidated, it transferred its building materials business to Edgecliff. (Third-Party Compl. ¶ 26.) Edgecliff became GAF Building. (*Id.* ¶ 28.) GAF Building sold its building materials business to GAF Newco, which became BMCA. (*Id.* ¶¶ 33–34.) BMCA renamed itself Standard. (*Id.* ¶ 37.) But the ISP Parties do not adequately allege that (1) Standard directly assumed Old GAF's liability for the LCP Site; or (2) Edgecliff assumed Old GAF's liability for the LCP Site and Standard assumed Edgecliff's liability. Nor do the ISP Parties adequately allege that either transaction was fraudulent to evade Old GAF's LCP Site liability. To the extent the ISP Parties seek to apply successor liability under a theory of *de facto* merger or continuity of business, they fail to plausibly show either: (1) Edgecliff's management and shareholders were the same as Old GAF's, Old GAF dissolved after the sale to Edgecliff, and Edgecliff picked up Old GAF's business uninterrupted; or (2) Standard's

management and shareholders were the same as Edgecliff's, Edgecliff dissolved after the sale to Standard, and Standard picked up where Edgecliff left off. In any event, the ISP Parties do not adequately allege an intent between Old GAF, Edgecliff, and Standard to effect a merger, rather than a sale. *Luxliner P.L. Exp.*, 13 F.3d at 73. The bare fact that Edgecliff bought Old GAF's building materials business and Standard's predecessor bought Edgecliff does not, by itself, allow the Court to "draw the reasonable inference that [Standard] is liable for [Old GAF's] misconduct." *Iqbal*, 556 U.S. at 678. At most, the ISP Parties assert that "[t]o the extent that IES is determined to be a successor to Old GAF, Standard is also a successor to Old GAF." (Third-Party Compl. ¶ 44.) But this is a bare legal conclusion, unsupported by any facts in the Third-Party Complaint. *Davis*, 824 F.3d at 341.[17] The ISP Parties thus fail to state a CERCLA claim against Standard upon which relief can be granted. Accordingly, Counts III and IV of the Third-Party Complaint are **DISMISSED** ***without prejudice*** as to Standard.

***ii. Count V (New Jersey Spill Act)***

"The New Jersey Spill Act is the state's analog to CERCLA." *Stearns & Foster*, 947 F. Supp. at 810. "Unsurprisingly, the law under the Spill Act has developed along parallel lines to that of CERCLA." *Id.* (quoting *N.J. DEPE v. Gloucester Env't Mgmt. Servs.*, 821 F. Supp. 999, 1009 (D.N.J. 1993)). Successor corporations, therefore, are not liable under the New Jersey Spill Act for the acts of a predecessor corporation, subject to the same four exceptions listed above. *See Cooper Indus.*, 678 F. Supp. 3d at 620 (analyzing corporate successor liability in context of New

[17] The ISP Parties argue that, because the Court rejected the argument that no ISP Party was a corporate successor to Old GAF in *ISP I* and *ISP II*, it must reject Standard's arguments here. (Opp'n to Standard 13-16.) Not so. The Government alleges IES expressly assumed Old GAF's environmental liabilities. (Compl. ¶ 48.) And in *ISP I*, the Court rejected the ISP Parties' argument that successor liability did not attach "because GAF Chemicals continued to exist after IES allegedly assumed the CERCLA liabilities." 2024 WL 2013949, at *5. Standard does not make this argument. In any event, the ISP Parties do not plausibly allege Standard expressly assumed Old GAF or Edgecliff's CERCLA liabilities.

Jersey Spill Act). New Jersey courts also employ "a fifth exception to the general rule of successor non-liability in products liability cases." *Id.* Under the "product-line" exception, "a successor corporation may be held strictly liable for defects in a predecessor's products if the successor 'acquires all or substantially all the assets of the predecessor corporation for cash and continues essentially the same manufacturing operation as the predecessor corporation.'" *Id.* (quoting *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 335 (1981)). The product-line exception applies to environmental tort cases. *See Dep't of Transp. v. PSC Res., Inc.*, 175 N.J. Super. 447, 467 (Law Div. 1980); *State, Dep't of Env't Prot. v. Ventron Corp.*, 94 N.J. 473, 503 (1983). Thus, where "the successor corporation acquires all or substantially all the assets of the predecessor corporation for cash and continues essentially the same operation as the predecessor corporation," the successor "incurs liability for the damages resulting from any discharges of hazardous substances by its predecessor." *PSC Res.*, 175 N.J. Super. at 467 (quoting *Ramirez*, 171 N.J. Super. at 278).

The New Jersey Spill Act is parallel to CERCLA, so the ISP Parties' failure to establish Standard's successor liability applies with equal force to both claims. Nor do the ISP Parties show that Standard acquired all Edgecliff's assets and continued the same business, and that Edgecliff did the same for Old GAF. Consequently, the ISP Parties' New Jersey Spill Act claim similarly fails.[18] And so, Count V of the Third-Party Complaint is **DISMISSED *without prejudice*** as to Standard.[19]

---

[18] It is, therefore, unnecessary to reach whether Standard was improperly joined as a third-party defendant under Rule 14(a).

[19] The ISP Parties' claims against Standard are factually inadequate, not legally insufficient on their face, and a curative amendment is not futile. *Phillips*, 515 F.3d at 236; *J.W.S. Delavau Co.*, 106 F. Supp. 2d at 764. Thus, dismissal without prejudice is appropriate.

## IV. CONCLUSION

For the foregoing reasons, G-I's motion to partially dismiss the Amended Crossclaim (ECF No. 221) is **GRANTED in part**. Count III of the Amended Crossclaim (ECF No. 173) is **DISMISSED *without prejudice***. Standard's motion to dismiss the Third-Party Complaint (ECF No. 222) is **GRANTED**. Counts III, IV, and V of the Third-Party Complaint (ECF No. 66) are **DISMISSED *without prejudice*** as to Standard. An appropriate Order accompanies this Opinion.

**DATED: 11/23/2026**

**JULIEN XAVIER NEALS**
United States District Judge